## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Commander ROBIN CHARGING HAWK LEE, ) | |
| 1005 Gramsie Road, #413 ) | |
| Shoreview, MN 55126 ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | |
| v. ) | Civil Action No. 1:25-cv-582. |
| ) | |
| ROBERT F. KENNEDY, ) | |
| in his official capacity as ) | |
| SECRETARY OF HEALTH AND ) | |
| HUMAN SERVICES, ) | |
| 200 Independence Avenue, SW ) | |
| Washington, DC 20201 ) | |
| ) | |
| *Defendant.* ) | |

## <u>COMPLAINT</u>

### *Introduction*

It is estimated that over six million Americans suffer from opioid use disorder. One of them is Commander Robin Lee, who formerly served as an officer in the United States Public Health Service Commissioned Corps. Thanks to CDR Lee's hard work and the support of many caring people, she is now no longer addicted to opioids. But in early 2017, her addiction led to the end of her career in the United States Public Health Service.

Seeking to correct this injustice, CDR Lee applied to the Board for Correction of PHS Commissioned Corps Records. Reviewing CDR Lee's application, the Board determined that her supervisors had ignored the signs that CDR Lee was suffering from opioid use disorder, and that this constituted an injustice. However, the Program Support Center Director overturned the Board's recommendation and declined to grant any relief. The Program Support Center Director's decision was unsupported by the evidence of record; failed to address, or explain why it was not

addressing, non-frivolous arguments made by CDR Lee; failed to correct injustice clearly present in the record; and failed to comply with federal law and thus deprived CDR Lee of her due process rights under the Fifth Amendment of the Constitution.

For all these reasons, CDR Lee accordingly seeks that this Honorable Court hold the Program Support Center Director's decision to be arbitrary and capricious, and remand to the Board for a new review which complies with all applicable laws and regulations.

### Jurisdiction

1.     This Court has jurisdiction under 28 U.S.C. § 1331, and under 5 U.S.C. §706(2)(A), which provides for redress in the district courts based upon agency decisions which are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."

### Venue

2.     Venue is proper under 28 U.S.C. §1391(e)(1).

### Parties

3.     Plaintiff, Commander Robin Charging Hawk Lee, is a citizen of the United States who resides at the address listed in the caption. At all relevant times during the conduct that gave rise to this action, Plaintiff was residing in the United States.

4.     Defendant, Robert F. Kennedy, is named in his official capacity as Secretary of Health and Human Services. In his capacity as Secretary, Defendant oversees the Board for Correction of PHS Commissioned Corps Records ("Board" or "the Board"), which acts in the Secretary's name and makes decisions on behalf of the Secretary. *See* 42 U.S.C. § 213a(a)(12), (b)(1); *see also* 10 U.S.C. § 1552(a)(1).

*Timeliness*

5.    On August 16, 2023, CDR Lee received a letter denying her application to the Board. CDR Lee's complaint is therefore timely filed. *See* 28 U.S.C. § 2401(a); *Rempfer v. U.S. Dept. of Air Force Bd. for Correction of Military Records,* 538 F.Supp.2d 200, 206 (D.D.C. 2008).

*Statement of the Facts*

6.    On January 3, 2000, CDR Lee began her career as a commissioned officer with the Public Health Service ("PHS") and was assigned to Indian Health Service where she served for 17 years and four months.

7.    CDR Lee, a member of the Yankton Sioux Tribe, Ihanktonwan Nation, was raised by an abusive father who suffered from alcoholism. This experience gave her a steadfast determination to live her life for others.

8.    However, it also made her aware of the harmful effects of addiction.

9.    CDR Lee's professional service in the PHS was exemplary. As a nurse, supervisor, and executive, her evaluations were nothing less than outstanding.

10.    CDR Lee received several commendations, and her reviews were excellent and supported her very early promotion to Commander.

11.    In recognition of her exemplary service, CDR Lee received many decorations, including the Commendation Medal, the Regular Corps Ribbon, and two Achievement Medals.

12.    CDR Lee was extremely invested in her job at the PHS.

13.    As a Native American Indian, she especially had a profound passion for serving within the Indian Health Service.

14.    But CDR Lee's relationship with the PHS changed, through no fault of her own, when she was prescribed two very powerful opioids, tramadol and hydrocodone, in 2010.

15. CDR Lee had been experiencing significant back pain from an underlying injury whose etiology was unclear.

16. Her doctor prescribed tramadol and hydrocodone, thinking that this would help CDR Lee manage her pain. The doctor also prescribed CDR Lee muscle relaxants.

17. Prior to this injury and prescription, CDR Lee had never struggled with opioid use.

18. While CDR Lee's pain did improve, she ultimately became addicted to opioids.

19. On or about December 23, 2015, after diagnostic testing, CDR Lee underwent L4-L5 spinal fusion surgery.

20. Over the next seven years, CDR Lee was prescribed physical therapy, painkillers, and muscle relaxants.

21. While the surgery helped with her back pain and injury, CDR Lee continued to suffer from opioid use disorder.

22. As a result of her pain from her back injury, the time and energy needed to recover from surgery and physical therapy, and especially CDR Lee's opioid use disorder which began through no fault of her own, CDR Lee's performance as a PHS officer began to decline.

23. Feeling overwhelmed by her physical, mental, and emotional pain, and the burden of her addiction, CDR Lee tried her best to not allow her conditions to impact her work.

24. Despite struggling for years with opioid use disorder, CDR Lee managed to keep her position in the PHS until April of 2017.

25. At times, CDR Lee was able to successfully manage her illness.

26. But by the start of 2017, CDR Lee's opioid use disorder had become so all-consuming that she began to miss work.

27.     CDR Lee struggled with feeling ashamed of her addiction, and did not want to come to work while under the influence of opioids.

28.     Because of the shame she felt surrounding her opioid use disorder, CDR Lee kept her struggles to herself, and did not share them with her superiors.

29.     Yet even while in the throes of opioid use disorder, CDR Lee cared enough about the PHS and her patients that she had the presence of mind not to come to work while abusing opioids.

30.     For this reason, she was Absent Without Leave ("AWOL") from her PHS assignment for a substantial period of time in early 2017.

31.     On April 12, 2017, the PHS entered an official request to put CDR Lee on AWOL status from February 6, 2017, to February 7, 2017, and then again on February 13, 2017, to April 5, 2017.

32.     Pursuant to this request, CDR Lee was terminated from the PHS, backdated to be effective on April 5, 2017.

33.     Following her discharge, CDR Lee sought treatment for her opioid use disorder. Today, after years of hard work and with the help of her caring friends, family, and treatment specialists, she is no longer using opioids.

34.     CDR Lee has also dedicated her time to helping others escape the pain of opioid use disorder.

35.     On March 31, 2020, CDR Lee submitted her application to the Board.

36.     CDR Lee requested that her record be corrected to 1) remove the adverse findings in order that she may request to return to the PHS; and, 2) reinstate her commission with three years of constructive service credit (following her commission termination on April 5, 2017).

Alternatively, CDR Lee requested that her Statement of Service be upgraded appropriately to reflect the responsibilities and work she undertook so that she can obtain civilian employment commensurate with her skill, experience, and education.

37.    On or about September 14, 2022, Captain Richard P. Schobitz, Director, Commissioned Corps Headquarters, submitted an advisory opinion to the Executive Secretary of the Board regarding CDR Lee's case.

38.    The advisory opinion concluded that "applicant's commission was properly terminated in accordance USPHS Commissioned Corps policies after she was AWOL for 30 days. Under these circumstances, policy gives explicit authority to terminate an officer's commission."

39.    Regarding CDR Lee's opioid use disorder, the advisory opinion wrote: "This information is new and was never part of or reason for the termination of her commission…There is no evidence the applicant ever reported her substances abuse struggles. Although substance abuse is a non-compensable condition, when she was medically evaluated by a Medical Review Board (MRB) in 2013 (Attachment 3) she could have made her struggles known…However, it was never part of her medical record nor did she report it or seek the assistance of the medical professionals. Additionally, in all the documents submitted by the applicant's agency, it was clear they were not aware of it either."

40.    On or about January 13, 2023, CDR Lee submitted a response to the advisory opinion.

41.    In this response, CDR Lee argued that 1) her opioid use disorder is a disability under PHS Equal Opportunity: Discrimination Complaints Processing Policy of CCIS CC26.1, Instruction 6, Sections D(7) and E(1), and therefore her termination was prohibited discrimination which failed to comply with PHS equal employment opportunity obligations; and, 2) because of

CDR Lee's opioid abuse, her absence was unavoidable, and thus CDR Lee could not have been deemed AWOL under CCI 29.1.5 ¶6-1; and, 3) CDR Lee's actions never violated the PHS Policy on Alcohol and Other Drug Abuse, CCPM CC29.3.8, because she never went to work while under the influence of opioids and CDR Lee's failure to report her opioid use disorder sooner is not punishable under PHS policy.

42.     On August 16, 2023, CDR Lee received a decision on her application.

43.     Reviewing CDR Lee's application on or about April 2023,[1] and again on June 20, 2023, the Board concluded that CDR Lee's "separation from the Corps was proper and thus there was no basis to reinstate her or to purge the AWOL records from her records." Thus the Board concluded that there was "no error" in CDR Lee's separation.

44.     But the Board was "concerned that the case file did not show any evidence that her supervisors ever confronted her for the reasons for her the AWOL [sic]. Her pattern and duration of AWOL were red flags of a substance abuse issue that the board believed were ignored by her supervisors. The Board members viewed the lack of supervisor intervention raised the possibility of an injustice to the officer. This was further substantiated by the former officer's post separation sobriety, employment history and activities supporting addicts in seeking assistance."

45.     On this basis, the Board determined that CDR Lee had indeed demonstrated an injustice. The Board stated that the "lack of supervision intervention" from CDR Lee's superiors merited corrective relief.

46.     The Board did not specify what this corrective relief should be.

---

[1] The Board stated that it reviewed CDR Lee's application on "Tuesday April 2023" but did not provide an exact date.

47.    However, on or about August 16, 2023, the Program Support Center Director ("PSC Director"), Patrick L. Hernandez, reviewed and overturned the Board's determination.

48.    The reason for the PSC Director's decision was his determination that CDR Lee's case file "clearly established evidence that her supervisors confronted her for the reasons for her AWOL."

49.    In support of this conclusion, the PSC Director cited CDR Lee's supervisor's submission of a request for a fitness for duty determination on June 1, 2012, due to CDR Lee's excessive absenteeism. Following this request for a fitness duty determination, in September 2012, a Medical Review Board ("MRB") determined that CDR Lee's medical conditions had resolved sufficiently to permit her to return to work.

50.    The PSC Director wrote, "This leads me to believe that the former officer's supervisor was concerned about the former officer's conduct and absenteeism and took the right steps to get the former officer medically evaluated."

51.    The PSC Director also noted that CDR Lee was again subject to an MRB in December 2013 to determine her medical fitness for continued service, and that the MRB was convened at the request of CDR Lee's supervisor, due to the supervisor's concern over her excessive use of medical leave and periods of AWOL.

52.    The PSC Director noted, "Both evaluations not only show that the former officer's leadership was concerned with her conduct, absenteeism and periods of AWOL, but acted on these concerns in a manner consistent with CCPM CC9.3.8 – 'Policy on Alcohol and Other Drug Abuse.'"

53.    Notably, the PSC Director never concluded that the evaluations showed that CDR Lee's superiors were concerned that she might be suffering from opioid use disorder.

54.     The PSC Director also stated that CDR Lee had "ample opportunity to self-report and seek medical help for her addiction to opioids…when she returned to duty after an extended instance of AWOL leading to her separation, she had the opportunity to report her addiction to opiates and avail herself to the "safe haven" provisions of Corps' policy. She did not report her addiction until filing an Application with the Board nearly three-years post separation."

55.     For these reasons, the PSC Director overturned the Board's recommendation and denied CDR Lee's claim for relief "with prejudice."

56.     In connection with this determination, the PSC Director did not make any mention of CDR Lee's statutory right to seek reconsideration by the Board if she could provide the Board with new materials. *See* 10 U.S.C. § 1552(a)(3)(D): "Any request for reconsideration of a determination of a board under this section, no matter when filed, shall be reconsidered by a board under this section if supported by materials not previously presented to or considered by the board in making such determination."

57.     The PSC Director's decision to overturn the Board's recommendation was made pursuant to a delegation by the Secretary of the Secretary's power to oversee the Board.

58.     The PSC Director's decision on CDR Lee's application was unsupported by the evidence of record.

59.     The PSC Director's decision also did not address, or explain why it was not addressing, CDR Lee's arguments that 1) her opioid use disorder is a disability under PHS Equal Opportunity: Discrimination Complaints Processing Policy of CCIS CC26.1, Instruction 6, Sections D(7) and E(1), and therefore her termination was prohibited discrimination which failed to comply with PHS equal employment opportunity obligations; and, 2) because of CDR Lee's opioid abuse, her absence was unavoidable, and thus CDR Lee could not have been deemed

9

AWOL under CCI 29.1.5 ¶6-1; and, 3) CDR Lee's actions never violated the PHS Policy on Alcohol and Other Drug Abuse, CCPM CC29.3.8, because she never went to work while under the influence of opioids and CDR Lee's failure to report her opioid use disorder sooner is not punishable under PHS policy.

60.    The PSC Director's decision also failed to correct injustice clearly present in the record.

61.    Finally, the PSC Director's decision failed to comply with federal law and thereby deprived CDR Lee of her due process rights under the Fifth Amendment of the Constitution.

62.    All in violation of 5 U.S.C. § 706(2)(A), (2)(B), (2)(C).

### *Plaintiff's First Claim*

### Violation of 5 U.S.C. § 706 (2)(A) – The PSC Director's Decision on CDR Lee's Application Was Unsupported by the Evidence of Record.

63.    The allegations of the preceding paragraphs are incorporated by reference as if fully stated herein.

64.    Federal courts have the obligation to "hold unlawful and set aside" any agency action which is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706 (2)(A).

65.    When the secretary of a military department, or a person so designated by such a secretary, decides to depart from the decision of the military department's board for the correction of military records, the decision of the secretary or the secretary's delegate is bound by the same standards as those that bind the initial decision by the board. *See Fuller v. Winter*, 538 F. Supp. 2d 179, 187-8 (D.D.C. 2008).

66.    Decisions of military correction boards which are unsupported by the evidence of record are arbitrary and capricious: "To put it simply, a decision unsupported by evidence would

be arbitrary." *Mitchell v. Del Toro, 2024 WL 4891906* *1, *4 (D.D.C. November 26, 2024), citing *Ass'n of Data Processing Serv. Orgs. v. Bd. Of Govs. of Fed. Reserve Sys.*, 745 F.2d 677, 684 (D.C. Cir. 1984).

67.    Moreover, a court is not "empowered to rubber-stamp the Board's decision simply because the supporting evidence may be substantial when considered by itself and in isolation from the evidence that fairly detracts from the Board's conclusion." *Smith v. Dalton*, 927 F.Supp. 1, 4 (D.D.C. 1996).

68.    Here, the PSC Director's decision on CDR Lee's application was unsupported by the evidence of record.

69.    The PSC Director stated that he decided to overturn the Board's recommendation to grant CDR Lee corrective relief because of his determination that CDR Lee's case file "clearly established evidence that her supervisors confronted her for the reasons for her AWOL."

70.    To support this determination, the PSC Director cited two pieces of evidence.

71.    First, the PSC Director cited CDR Lee's supervisor's submission of a request for a fitness for duty determination on June 1, 2012, due to CDR Lee's due to excessive absenteeism. Following this request for a fitness for duty determination, in September 2012, an MRB determined that CDR Lee's medical conditions had resolved sufficiently to permit her to return to work.

72.    The PSC Director wrote, "This leads me to believe that the former officer's supervisor was concerned about the former officer's conduct and absenteeism and took the right steps to get the former officer medically evaluated."

73.    Yet the PSC Director never concluded that this MRB found or even considered that CDR Lee was suffering from opioid use disorder, or that CDR Lee's supervisor initiated the MRB because they believed or suspected that CDR Lee was suffering from opioid use disorder.

74.    Second, the PSC Director cited that CDR Lee was again subject to an MRB in December 2013 to determine her medical fitness for continued service, and that the MRB was convened at the request of CDR Lee's supervisor, due to the supervisor's concern over her excessive use of medical leave and periods of AWOL.

75.    The PSC Director noted, "Both evaluations not only show that the former officer's leadership was concerned with her conduct, absenteeism and periods of AWOL, but acted on these concerns in a manner consistent with CCPM CC9.3.8 – 'Policy on Alcohol and Other Drug Abuse.'"

76.    But here, the PSC Director also never concluded that this MRB found or even considered that CDR Lee was suffering from opioid use disorder, or that her supervisor initiated the MRB because they believed or suspected that CDR Lee was suffering from opioid use disorder.

77.    The evidence cited by the PSC Director thus failed to support his decision.

78.    The Board's contrary decision – that CDR Lee's case "did not show any evidence that her supervisors ever confronted her for the reasons for her the AWOL [sic]" – was supported by the evidence of record. *See Smith,* 927 F.Supp. at 4 (evidence in favor of military correction board's decision must also be weighed against evidence detracting from that decision).

79.    In favor of its decision, the Board cited CDR Lee's "pattern and duration of AWOL", which it stated were "red flags of a substance abuse issue." The Board could find no evidence that CDR Lee's supervisors actually addressed the issue of opioid use disorder with her.

80.    The absence of any evidence of supervisor intervention specifically aimed at addressing CDR Lee's opioid use disorder strongly supports the Board's conclusion, and fatally undermines the PSC Director's contrary finding.

81.    But the Board was not done; it also cited CDR Lee's "post separation sobriety, employment history and activities supporting addicts in seeking assistance" as evidence which further "substantiated" that supervisors had not intervened appropriately to give CDR Lee the help she needed, despite evidence that CDR Lee had opioid use disorder.

82.    The advisory opinion's comments also strongly support the Board's conclusion that CDR Lee's superiors were unaware of, and therefore did not intervene regarding, CDR Lee's opioid use disorder: "This information [CDR Lee's opioid use disorder] *is new* and was never part of or reason for the termination of her commission…There is no evidence the applicant ever reported her substances abuse struggles. Although substance abuse is a non-compensable condition, when she was medically evaluated by a Medical Review Board (MRB) in 2013 (Attachment 3) she could have made her struggles known…However, it was never part of her medical record nor did she report it or seek the assistance of the medical professionals. Additionally, in all the documents submitted by the applicant's agency, *it was clear they were not aware of it either*" (emphasis added).

83.    The PSC Director did not address the conclusions of the advisory opinion in his decision.

84.    By ignoring and mitigating the evidence provided by the Board and the advisory opinion showing that CDR Lee's superiors did not intervene to assist CDR Lee with her opioid use disorder, and providing inapt evidence of his own which failed to address or rebut the Board's

conclusions, and then overturning the Board's recommendation to grant CDR Lee relief, the PSC Director reached a decision on CDR Lee's application unsupported by the evidence of record.

85.    All in violation of 5 U.S.C. § 706 (2)(A).

### *Plaintiff's Second Claim*

**Violation of 5 U.S.C. § 706 (2)(A) – The PSC Director's Decision Failed to Address, or Explain Why It Was Not Addressing, Non-Frivolous Arguments By CDR Lee.**

86.    The allegations of the preceding paragraphs are incorporated by reference as if fully stated herein.

87.    Federal courts have the obligation to "hold unlawful and set aside" any agency action which is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706 (2)(A).

88.    When the secretary of a military department, or a person so designated by such a secretary, decides to depart from the decision of the military department's board for the correction of military records, the decision of the secretary or the secretary's delegate is bound by the same standards as those that bind the initial decision by the board. *See Fuller*, 538 F. Supp. 2d at 187-188.

89.    A military correction Board's decision is considered arbitrary and capricious when it "entirely fail[s] to consider an important aspect of the problem" presented in an application. *See Motor Vehicle Manufacturers' Association v. State Farm Mutual Automobile Insurance Company*, 463 U.S. 29, 43 (1983).

90.    A Board entirely fails to consider an important part of the problem presented in an application if the Board either does not address, or does not explain why it is not addressing, non-frivolous arguments raised by an applicant. *See Frizelle v. Slater,* 111 F.3d 172, 177 (D.C. Cir. 1997); *see also Saint–Fleur v. McHugh*, 83 F.Supp.3d 149, 155 (D.D.C. 2015);  *Rudo v. Geren*,

818 F. Supp. 2d 17, 26-7 (D.D.C. 2011); *Calloway v. Brownlee*, 366 F. Supp. 2d 43, 55 (D.D.C. 2005); *Mudd v. Caldera*, 26 F.Supp.2d 113, 120-123 (D.D.C. 1998).

91.    A decision by a Board which either "completely ignores" or "fails to acknowledge…most of the arguments" made by an applicant is arbitrary and capricious. *Frizelle v. Pena,* 1993 WL 548825 *1, *4 (D.D.C. 1993).

92.    "It is not enough for the board merely to acknowledge that an argument exists…or to identify a plaintiff's non-frivolous arguments without responding to them, either by addressing the arguments' merits or explaining why they need not be addressed." *Manning v. Fanning,* 211 F.Supp.3d 129, 138 (D.D.C. 2016) (citing *Rudo*, 818 F. Supp. 2d at 26-7 and quoting *Albino v. United States,* 78 F.Supp.3d 148, 167 (D.D.C. 2015)).

93.    A mere reference to a non-frivolous argument does not suffice; a Correction Board must address the "argument in its discussion or explain[] why it chose not to address it." *Rudo*, 818 F. Supp. 2d at 26-7. *See also Blanco v. Wormuth*, 2023 WL 6809940 at *6 (D.D.C. October 16, 2023) (holding that a Board "acknowledged many of Plaintiff's arguments only to fail to address or resolve those arguments in any discernible way in its analysis.")

94.    A Board that meets an applicant's argument with silence has failed to consider that argument. *Tennekoon v. Fanning,* 156 F.Supp.3d 208, 218 (D.D.C. 2016). *See also Roberts v. Harvey*, 441 F.Supp.2d 111, 122 (D.D.C.2006) (remanding where a Correction Board "failed to grapple with what appears to be a substantial issue"); *Mori v. Dep't of the Navy*, 917 F.Supp.2d 60, 64 (D.D.C.2013) ("By not discussing plaintiff's evidence, the Secretary leaves plaintiff and the Court to scratch their heads as to why the Secretary found plaintiff's evidence unpersuasive").

95.    If a Board fails to address, or fails to explain why it has not addressed, arguments "which do not appear frivolous on their face and could affect the Board's ultimate disposition," a

reviewing court must remand the application to the Board to consider the argument. *Appleby v. Harvey,* 517 F.Supp.2d 253, 266 (D.D.C. 2007) (quoting *Frizelle,* 111 F.3d at 177). *See also Saint-Fleur,* 83 F.Supp.3d at 157-158 (holding that because the parties' briefing did not adequately substantiate that the applicant's argument was frivolous, the proper course was a remand to the Board).

96.     Here, the PSC Director's decision to deny CDR Lee's application failed to address, or explain why it was not addressing, three non-frivolous arguments made by CDR Lee.

97.     First, the PSC Director failed to address, or explain why he was not addressing, CDR Lee's argument that her opioid use disorder is a disability under PHS Equal Opportunity: Discrimination Complaints Processing Policy of CCIS CC26.1, Instruction 6, Sections D(7) and E(1), and therefore her termination was prohibited discrimination which failed to comply with PHS equal employment opportunity obligations.

98.     Second, the PSC Director failed to address, or explain why he was not addressing, CDR Lee's argument that because of her opioid abuse, her absence was unavoidable, and thus CDR Lee could not have been deemed AWOL under CCI 29.1.5 ¶6-1.

99.     Third, and finally, the PSC Director failed to address, or explain why he was not addressing, CDR Lee's argument that her actions never violated the PHS Policy on Alcohol and Other Drug Abuse, CCPM CC29.3.8, because she never went to work while under the influence of opioids and CDR Lee's failure to report her opioid use disorder sooner is not punishable under PHS policy.

100.     All in violation of 5 U.S.C. § 706 (2)(A).

***Plaintiff's Third Claim***

**Violation of 5 U.S.C. § 706 (2)(A) – The PSC Director's Decision Failed to Correct Injustice Clearly Present in the Record.**

101.   The allegations of the preceding paragraphs are incorporated by reference as if fully stated herein.

102.   Federal courts have the obligation to "hold unlawful and set aside" any agency action which is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706 (2)(A).

103.   When the secretary of a military department, or a person so designated by such a secretary, decides to depart from the decision of the military department's board for the correction of military records, the decision of the secretary or the secretary's delegate is bound by the same standards as those that bind the initial decision by the board. *See Fuller*, 538 F. Supp. 2d at 187-188.

104.   Military correction boards have a statutory obligation to correct injustice when it is clearly present in the record. *See* 10 U.S.C. § 1552(a)(1); *Code v. McCarthy*, 959 F.3d 406, 415 (D.C. Cir. 2020).

105.   Boards "have a duty to determine whether there has been error or injustice and, if there has been, to grant thorough and fitting relief." *Dodson v. United States Gov't Dept. of Army*, 988 F.2d 1199, 1204 (Fed. Cir. 1993).

106.   "[W]hen a correction board fails to correct an injustice clearly presented in the record before it, it is acting in violation of its mandate. And such a violation, contrary to the evidence, is arbitrary and capricious." *Haselwander v. McHugh*, 774 F.3d 990, 996 (D.C. Cir. 2014), *quoting Yee v. United States*, 206 Ct.Cl. 388, 397 (1975); *see also McKinney v. Wormuth,* 5 F.4th 42, 45 (D.C. Cir. 2021); *Code,* 959 F.3d at 415; *Roth v. United States*, 378 F.3d 1371, 1381

(Fed. Cir. 2004) (Secretary obligated not only to properly determine the nature of any error or injustice, but to take "such corrective action as will appropriately and fully erase such error or compensate such injustice"); *Sanders v. United States*, 594 F.2d 804, 812 (Ct. Cl. 1979) (holding that the Secretaries of the military departments, acting through Boards, have not only the "power" but also the "duty" to correct injustice).

107.    Here, and as the Board itself recognized, CDR Lee's record evidences clear injustice.

108.    CDR Lee became dependent on opioids through no fault of her own, but because her doctor prescribed two very powerful opioids, tramadol and hydrocodone, in 2010 for her back injury.

109.    CDR Lee subsequently developed opioid use disorder, which made it increasingly difficult for her to function on a personal and professional level as time passed.

110.    Prior to this injury and prescription, CDR Lee had never struggled with opioid use.

111.    The Board reviewed CDR Lee's application and determined that there was an injustice in her record.

112.    After being discharged from the PHS, CDR Lee sought treatment for her opioid use disorder.

113.    CDR Lee worked hard for many years and got help from caring friends, family, and treatment specialists. Now, she is no longer using opioids.

114.    In recognition of how grateful she is to have experienced enormous improvement in her struggle with opioid use disorder, CDR Lee has dedicated her time to helping others who are similarly afflicted by opioid use disorder.

115.    Because of the shame she felt surrounding her opioid use disorder, CDR Lee kept her struggles to herself, and did not share them with her superiors.

116.    Reviewing CDR Lee's case file, the Board agreed and found that the case file "did not show any evidence that her supervisors ever confronted her for the reasons for her the AWOL [sic]. Her pattern and duration of AWOL were red flags of a substance abuse issue that the board believed were ignored by her supervisors. The Board members viewed the lack of supervisor intervention raised the possibility of an injustice to the officer. This was further substantiated by the former officer's post separation sobriety, employment history and activities supporting addicts in seeking assistance."

117.    On this basis, the Board determined that CDR Lee had indeed demonstrated an injustice. The Board stated that the "lack of supervision intervention" from CDR Lee's superiors merited corrective relief.

118.    The advisory opinion's comments also strongly support the Board's conclusion that CDR Lee's superiors were unaware of, and therefor did not intervene regarding, CDR Lee's opioid use disorder: "This information [CDR Lee's opioid use disorder] *is new* and was never part of or reason for the termination of her commission…There is no evidence the applicant ever reported her substances abuse struggles. Although substance abuse is a non-compensable condition, when she was medically evaluated by a Medical Review Board (MRB) in 2013 (Attachment 3) she could have made her struggles known…However, it was never part of her medical record nor did she report it or seek the assistance of the medical professionals. Additionally, in all the documents submitted by the applicant's agency, *it was clear they were not aware of it either*" (emphasis added).

119.    Despite all this evidence, the PSC Director overturned the Board's recommendation.

120.    The reason for the PSC Director's decision was his determination that CDR Lee's case file "clearly established evidence that her supervisors confronted her for the reasons for her AWOL."

121.    However, the PSC Director was unable to articulate any clear evidence that CDR Lee's supervisors believed that she was suffering from opioid use disorder, let alone intervened and helped her get the assistance she needed.

122.    The PSC Director cited two pieces of evidence in favor of his determination.

123.    First, the PSC Director cited CDR Lee's supervisor's submission of a request for a fitness for duty determination on June 1, 2012, due to CDR Lee's due to excessive absenteeism. Following this request for duty determination, in September 2012, an MRB determined that CDR Lee's medical conditions had resolved sufficiently to permit her to return to work.

124.    The PSC Director wrote, "This leads me to believe that the former officer's supervisor was concerned about the former officer's conduct and absenteeism and took the right steps to get the former officer medically evaluated."

125.    Yet the PSC Director never concluded that this MRB found or even considered that CDR Lee was suffering from opioid use disorder, or that her supervisor initiated the MRB because they believed or suspected that CDR Lee was suffering from opioid use disorder.

126.    Second, the PSC Director cited that CDR Lee was again subject to an MRB in December 2013 to determine her medical fitness for continued service, and that the MRB was convened at the request of CDR Lee's supervisor, due to the supervisor's concern over her excessive use of medical leave and periods of AWOL.

127.    The PSC Director noted, "Both evaluations not only show that the former officer's leadership was concerned with her conduct, absenteeism and periods of AWOL, but acted on these concerns in a manner consistent with CCPM CC9.3.8 – 'Policy on Alcohol and Other Drug Abuse.'"

128.    But this piece of evidence suffers from the same defect as the first: the PSC Director never concluded that this MRB found or even considered that CDR Lee was suffering from opioid use disorder either, or that her supervisor initiated the MRB because they believed or suspected that CDR Lee was suffering from opioid use disorder.

129.    And tellingly, the PSC Director himself never stated that the evaluations showed that CDR Lee's superiors were concerned that she might be suffering from opioid use disorder.

130.    As such, the PSC Director failed to rebut the Board's determination that CDR Lee's case file "did not show any evidence that her supervisors ever confronted her for the reasons for her the AWOL [sic]" and that the "pattern and duration of [CDR Lee's] AWOL were red flags of a substance abuse issue…ignored by her supervisors."

131.    The PSC Director also failed to address the Board's determination that CDR Lee's "post separation sobriety, employment history and activities supporting addicts in seeking assistance" all "substantiated" that her supervisors had failed to "interven[e]" appropriately in her case.

132.    By ignoring and mitigating the evidence provided by the Board and the advisory opinion showing that CDR Lee's superiors did not intervene to assist CDR Lee with her opioid use disorder, and providing inapt evidence of his own which failed to address or rebut the Board's conclusions, and then overturning the Board's recommendation to grant CDR Lee relief, the PSC Director failed to correct injustice clearly present in the record.

133.    All in violation of 5 U.S.C. § 706 (2)(A).

### Plaintiff's Fourth Claim

**Violation of 5 U.S.C. § 706 (2)(A), (2)(B), and (2)(C) – The PSC Director's Decision Failed to Comply with Federal Law and Deprived CDR Lee of Her Due Process Rights Under the Fifth Amendment of the Constitution.**

134.    The allegations of the preceding paragraphs are incorporated by reference as if fully stated herein.

135.    Federal courts have the obligation to "hold unlawful and set aside" any agency action which is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law…contrary to constitutional right…[or] short of statutory right." 5 U.S.C. § 706(2)(A), (2)(B), (2)(C).

136.    When the secretary of a military department, or a person so designated by such a secretary, decides to depart from the decision of the military department's board for the correction of military records, the decision of the secretary or the secretary's delegate is bound by the same standards as those that bind the initial decision by the board. *See Fuller*, 538 F. Supp. 2d at 187-188.

137.    The Fifth Amendment provides that "[n]o person shall be…deprived of life, liberty, or property, without due process of law." U.S. CONST., AMEND V.

138.    "An agency cannot issue regulations and directives which are inconsistent with an act of Congress." *Younger v. Turnage*, 677 F. Supp. 16, 22 (D.D.C. 1988); *see also Envtl. Def. Fund v. EPA*, 922 F.3d 446, 457 (D.C. Cir. 2019) ("A regulation can never trump the plain meaning of a statute" (cleaned up)).

139.    10 U.S.C. § 1552 governs the structure and procedures of military correction boards.

140.    Under 10 U.S.C. § 1552(a)(3)(D), "Any request for reconsideration of a determination of a board under this section, no matter when filed, *shall* be reconsidered by a board under this section if supported by materials not previously presented to or considered by the board in making such determination" (emphasis added).

141.    Military correction boards thus do not have the authority to deny claims made by applicants with prejudice.

142.    The Board for Correction of PHS Commissioned Corps Records is a military correction board within the meaning of, and governed by, 10 U.S.C. § 1552. *See* 42 U.S.C. § 213a(a)(12), (b)(1).

143.    Therefore, any regulation promulgated by the PHS which might give the Secretary, or the Secretary's delegate, authority to deny claims with prejudice is "inconsistent with an act of Congress" and thus invalid. *See Younger*, 677 F. Supp. at 22.

144.    Here, because the PSC Director's decision failed to comply with federal law, CDR Lee has been deprived of her due process rights before the Board.

145.    The PSC Director denied CDR Lee's claim "with prejudice."

146.    However, the "plain meaning" of 10 U.S.C. § 1552(a)(3)(D) requires that the Board shall reconsider any request for reconsideration made by CDR Lee, if that request for reconsideration is supported by new materials. *See Envtl. Def. Fund*, 922 F.3d at 457.

147.    The PSC Director thus lacks the authority under federal law to deny CDR Lee's claim with prejudice.

148.    In doing so, the PSC Director violated CDR Lee's due process rights under the Constitution. *See* U.S. CONST., AMEND V.

149.    All in violation of 5 U.S.C. § 706(2)(A), (2)(B), (2)(C).

*Prayer for Relief*

WHEREFORE, CDR Lee prays that judgment be entered:

(a)  Holding that the PSC Director's decision on CDR Lee's application was unsupported by the evidence of record; and,

(b)  Holding that the PSC Director's decision failed to address, or explain why it was not addressing, non-frivolous arguments made by CDR Lee; and,

(c)  Holding that the PSC Director's decision failed to correct injustice clearly present in the record; and,

(d)  Holding that the PSC Director's decision failed to comply with federal law and deprived CDR Lee of her due process rights under the Fifth Amendment of the Constitution; and,

(e)  Holding that, for any or all of the above reasons, and pursuant to 5 U.S.C. § 706(2)(A), (2)(B), (2)(C), the PSC Director's entire decision is therefore "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law…contrary to constitutional right…[or] short of statutory right"; and,

(f)  Remanding CDR Lee's case to the Board for a new review which complies with all applicable laws and regulations; and,

(g)  An award of attorney's fees to CDR Lee for the costs of bringing this action; and,

(h)  any other and further relief as the Court may deem, in the circumstances, be just and proper.

Dated February 27, 2025.                    Respectfully submitted,

                                            */s/  Dylan Thayer*
                                            Dylan Thayer
                                            DC Bar No. 90015821

/s/*David P. Sheldon*
David P. Sheldon
DC Bar No. 446039

Law Offices of David P. Sheldon, P.L.L.C.
100 M Street, S.E., Suite 600
Washington, DC  20003
Tel: 202.546.9575
Fax: 202.546.0135
*Attorneys for Plaintiff*