**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| ROBIN CHARGING HAWK LEE, | : | |
| | : | |
| Plaintiff, | : | Civil Action No.:    25-582 (RC) |
| | : | |
| v. | : | Re Document Nos.:   13, 16 |
| | : | |
| ROBERT F. KENNEDY, JR., | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM OPINION**

**DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S CROSS-
MOTION FOR SUMMARY JUDGMENT**

**I.  INTRODUCTION**

Plaintiff Robin Charging Hawk Lee ("Plaintiff") is a former officer in the Commissioned

Corps of the Public Health Service (the "Corps") who served as a nurse with the Indian Health

Service from 2000 until her termination in 2017. The Corps terminated her service due to

extensive absence without leave ("AWOL") and failure to report to duty. In 2020, Plaintiff

applied to correct her personnel record, seeking removal of the AWOL designation and

requesting reinstatement to the Corps. She submitted her application to the Board for Correction

of Commissioned Corps Records (the "Correction Board"). The Correction Board reviews such

requests and makes recommendations to the Secretary of the Department of Health and Human

Services (the "Secretary") regarding whether to grant relief. In her record correction application,

Plaintiff asserted that an undisclosed opioid addiction caused her AWOL. She further stated that,

since her termination, she had received treatment, recovered, and was now capable of gainful

employment. Although Plaintiff had not disclosed her addiction to the Corps while in its service,

she contended that the Corps overlooked "obvious signs" of her condition and improperly terminated her without first addressing her substance abuse issues.

After reviewing the application, the Correction Board recommended partial relief. It declined to remove the AWOL designation from Plaintiff's record but recommended waiving applicable policies to make Plaintiff eligible for reinstatement, citing an injustice reflected in her record, that is, the Corps' failure to identify her opioid addiction. The Director of Program Support Center of the Health and Human Services (the "Director"), acting on behalf of the Secretary, rejected the Correction Board's recommendation, concluding that no error or injustice existed. Plaintiff then filed suit, alleging that the Director's decision was arbitrary and capricious under the Administrative Procedure Act (the "APA"). The case is now before the Court on cross-motions for summary judgment. After careful consideration of the record and the parties' submissions, the Court denies Plaintiff's motion and grants the Secretary's cross-motion for the reasons set forth below.

## II.  BACKGROUND

### A.  Legal Background

Although the Corps is part of the Department of Health and Human Services, it is nonetheless one of the seven uniformed services of the United States military. *Verbeck v. United States*, 89 Fed. Cl. 47, 51 (2009). "The Secretary of a military department may correct any military record of the Secretary's department when the Secretary considers it necessary to correct an error or remove an injustice." 10 U.S.C. § 1552(a)(1); 42 U.S.C. § 213a(a)(12). As it relates to the Corps, record corrections are made by the Secretary of Health and Human Services acting through a board of civilians known as the Board for Correction of Commissioned Corps Records. 10 U.S.C. § 1552(a)(1); 42 U.S.C. § 213a(a)(12); Commissioned Corps Directive ("CCD")

129.01. A former Corps officer may seek a record correction by submitting an application to the Correction Board. CCD 129.01 ¶ 6-2. The Correction Board's function is to consider such applications to determine whether an error or an injustice exists and to recommend a disposition of the application to the Secretary, or his delegate, the Director. *Id.* ¶ 6-1(b). Once the Correction Board receives a record correction application, Commissioned Corps Headquarters prepares an advisory opinion for the Correction Board's consideration.  App'x A ¶¶ 2(a), 3(a) to CCD 129.01. The Board then evaluates the application alongside the advisory opinion, supporting evidence, and any rebuttal, and issues a written recommendation on whether to grant or deny relief. *Id.* ¶¶ 6, 8, 10; CCD 129.01 ¶¶ 6-6(b)–(c). The Director, acting on behalf of the Secretary, then reviews the full record, including the Board's recommendation and the advisory opinion. CCD 129.01 ¶¶ 6-6(h), (j). The Director may then approve the Correction Board's recommendation, reject it, or remand the matter to the Correction Board for further consideration. *Id.* ¶ 6-6(j). Once a final decision is made, the decision is redacted and made publicly available. *Id.* ¶ 6-6(n). An applicant may later seek reconsideration of that decision under certain circumstances, such as if newly discovered evidence or information not previously considered by the Correction Board is presented by the applicant. *Id.* ¶ 6-6(k); 10 U.S.C. § 1552(a)(3)(D).

### B.  Factual Background

#### 1.  Plaintiff's AWOL

Plaintiff is a former Corps Nurse Officer assigned to the Indian Health Service. A.R. 123. Plaintiff's service in the Corps lasted from 2000 until her termination in 2017, when she failed to report to duty for more than 30 consecutive days. A.R. 91, 124. Throughout her tenure with the Corps, Plaintiff was placed on AWOL for a total of 136 days. A.R. 95.

In 2013, the Corps placed Plaintiff on AWOL on two occasions, both of which were for a period greater than 30 days. A.R. 95, 229, 231 (AWOL for 49 days from March to May 2013; AWOL for 32 days from June to July 2013). As a result of her excessive absences, Plaintiff's supervisors requested a Medical Review Board investigate Plaintiff's fitness for duty, which took place in December 2013. A.R. 95, 233. The Board reviewed Plaintiff's statement describing mental health issues stemming from a hostile work environment, along with provider statements, medical records, and a psychiatric evaluation diagnosing Plaintiff with severe major depressive disorder in early remission. A.R. 205–10. Finding that she was improving with treatment, the Board concluded she was fit for duty. A.R. 209–10.

A Medical Review Board had previously investigated Plaintiff's fitness for duty in 2012 at the request of her supervisors on account of Plaintiff's excessive absenteeism and evaluations describing her performance as "substandard" and "unsatisfactory." A.R. 205–06. The Medical Review Board's investigation at that time revealed that Plaintiff had been suffering from multiple physical conditions, including recurrent lower back pain, migraine, and left anterior shoulder pain. *Id.* After reviewing Plaintiff's statements and medical records, the Medical Review Board determined that Plaintiff's medical conditions had resolved sufficiently such that she was medically fit for duty. *Id.*

In February 2017, the Corps placed Plaintiff on AWOL after she failed to report to duty, at which point she never returned to work, despite multiple attempts by her supervisor to contact her. AR 240, 271–73. In April 2017, the Corp terminated Plaintiff for being AWOL for more than 30 days. A.R. 241. In terminating Plaintiff, the Corps cited CCD 111.02, which permits the Corps to terminate an officer without their consent if the officer has been AWOL for at least 30 consecutive days. *Id.*; CCD 111.02 ¶ 6-5(a); *see also* CCD 123.01 ¶ 6-2(i).

4

2.  Plaintiff's Record Correction Application

Three years after the Corps terminated Plaintiff for her AWOL, Plaintiff sought to have the Secretary correct a purported injustice she asserted was present in her personnel records. A.R. 123. In her record correction application to the Correction Board, Plaintiff asserted that her AWOL was due to an opioid addiction. A.R. 125–29. Since her termination from the Corps, Plaintiff had sought treatment for her condition, recovered, and had obtained gainful employment at a medical center. A.R. 128–29, 138, 141. In light of this, she sought to have the AWOL in her records purged and to be reinstated in the Corps retroactively. *See, e.g.*, A.R. 1, 90, 102, 117, 125, 289. Alternatively, she sought revision of her Statement of Service to accurately reflect her responsibilities and experience, enabling her to pursue civilian employment consistent with her qualifications. *See, e.g.*, A.R. 289–90.

As part of the application review process, Commissioned Corps Headquarters issued an advisory opinion to the Correction Board, recommending that Plaintiff's record correction application be denied. *See* A.R. 220–27. The advisory opinion explained that Plaintiff's records contained neither an error nor an injustice. *See* A.R. 225–26. Per Corp policy, an officer who is AWOL for 30 consecutive days may be terminated, and Plaintiff had failed to report to her appointed place of duty at the time prescribed without authorization. *Id.* Regarding Plaintiff's opioid abuse, the advisory opinion found no evidence that Plaintiff ever reported her opioid abuse issues to the Corps. *See* A.R. 226. Accordingly, the advisory opinion concluded, the Corps had properly terminated Plaintiff. *Id.*

Next, the Correction Board reviewed Plaintiff's application, as well as Headquarters' advisory opinion. It concluded that "portions of her requested relief [were] reasonable under the circumstances." A.R. 117. According to the Correction Board, "[t]here is no reason that she

cannot serve as [a] Corps officer again except Corps Policy" and "[b]aring [sic] reappointment in the Corps is an injustice to the officer." *Id.* The Correction Board thus recommended, among other things, that "[a]ll Corps policies prohibiting her appointment as a Nurse Officer . . . [be] waived" and that "[t]he Corps . . . give her priority in locating a suitable position in [the] Indian Health Service." *Id.* In so recommending, the Correction Board explained that "[t]he stigma of addition [sic] is well known as a hindrance to reporting it." *Id.* Moreover, the Correction Board stated that supervisors have an obligation to inquire into a Corps member's performance issues when there are indications that those issues may be attributable to an addiction or other medical condition. *Id.* It found no evidence that Plaintiff's supervisors fulfilled that obligation. *Id.* Although the Correction Board recommended Plaintiff be made eligible for reinstatement in the Corps, it declined to recommend that the AWOL in her record be removed, as Plaintiff failed to inform her supervisor of her opioid addiction. *Id.*

After reviewing the Correction Board's recommendation, the Director declined to adopt it. A.R. 1–2. The Director disagreed with the Correction Board's finding that Plaintiff's supervisors neglected obvious signs of addiction and did not confront her about it. A.R. 2. In the Director's view, "the case file clearly established evidence that her supervisors confronted her for the reasons for her AWOL." *Id.* For instance, Plaintiff's supervisors twice ordered a fitness for duty determination due to Plaintiff's absenteeism. *Id.* Each time, a Medical Review Board determined that Plaintiff's medical conditions had sufficiently resolved to permit her to return to work. *Id.* The Director thus denied granting Plaintiff any of her requested relief. *Id.*

### C.  Procedural Background

Plaintiff filed her Complaint in February 2025, challenging the Director's decision to deny her record correction application, asserting various theories under § 706(2) of the APA. *See*

6

*generally* Compl., ECF No. 1. Plaintiff subsequently moved for summary judgment in October 2025, and Defendant cross-moved for the same in December 2025. Pls.'s Mot. Summ. J., ECF No. 13; Def.'s Cross-Mot. Summ. J., ECF No. 16. The parties filed replies in support of their motions. Pls. Reply, ECF No. 19; Def.'s Reply, ECF No. 21. The parties then filed a Joint Appendix for the Court's review in February 2026. J.A., ECF No. 22. The motions are now fully briefed and ready for this Court's consideration.

### III.  LEGAL STANDARD

"Ordinarily, summary judgment is appropriate when the pleadings and the evidence demonstrate that 'there is no genuine dispute as to any material fact.'" *Ardmore Consulting Grp., Inc. v. Contreras-Sweet*, 118 F. Supp. 3d 388, 393 (D.D.C. 2015) (quoting Fed. R. Civ. P. 56(a)). The standard set forth in Rule 56(a) does not apply, however, when a court is reviewing a final agency action under the APA. *See Roberts v. United States*, 883 F. Supp. 2d 56, 62–63 (D.D.C. 2012). "Instead of reviewing the record for disputed facts that would preclude summary judgment, the function of the district court is a more limited one: 'to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did.'" *Ardmore Consulting Grp., Inc.*, 118 F. Supp. 3d at 393 (quoting *Kaiser Found. Hosps. v. Sebelius*, 828 F. Supp. 2d 193, 198 (D.D.C. 2011)). This is a "narrow" inquiry; a court "is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

Nevertheless, a reviewing court must set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Under the arbitrary-and-capricious standard, the agency must show that it considered the relevant evidence and offered a reasoned explanation that connects the facts it found to the decision it

7

made. *Alpharma, Inc. v. Leavitt*, 460 F.3d 1, 6 (D.C. Cir. 2006). When an agency fails to provide such an explanation or when the record contradicts its conclusions, the court must set the action aside. *Cnty. of Los Angeles v. Shalala*, 192 F.3d 1005, 1021 (D.C. Cir. 1999). Put simply, the agency must articulate why it chose to act as it did. *Butte Cnty. v. Hogen*, 613 F.3d 190, 194 (D.C. Cir. 2010).

## IV.  ANALYSIS

Plaintiff challenges the Director's denial of her record correction application as arbitrary and capricious under the APA. She raises two main arguments. First, Plaintiff contends that the Director's decision was unsupported by substantial evidence and as a result, erroneously failed to correct a purported injustice present in her personnel records. Second, Plaintiff further contends that by denying her record correction application "with prejudice," A.R. 2, the Director deviated from the governing statute, violating her due process rights. In the context of record corrections under 10 U.S.C § 1552(a), as is the case here, such decisions are subject to an "unusually deferential application of the arbitrary or capricious standard of the APA." *Roberts v. United States*, 741 F.3d 152, 158 (2014) (citation modified). "Adjudication of these claims requires the district court to determine only whether the Secretary's decision making process was deficient, not whether his decision was correct." *Kreis v. Sec'y of Air Force*, 866 F.2d 1508, 1511 (D.C. Cir. 1989). "[U]nder such a deferential standard of review," usually "only the most egregious decisions may be prevented." *Id.* at 1515. This is not such a case. As explained below, the Director's decision is adequately supported by the record and does not violate Plaintiff's due process rights. Giving "all due deference" to the Secretary "against the 'arbitrary or capricious' standard of the APA," *id.* at 1514–15, the Court declines to set aside the Director's decision.

8

### A. The Director's Decision To Deny Plaintiff's Record Correction Application Was Neither Arbitrary Nor Capricious

The Director found no error or injustice in Plaintiff's record, declining to remove the AWOL from her record or make her eligible for reinstatement in the Corps. A.R. 2. The Director reasoned that the case file clearly established that Plaintiff's supervisors confronted her for the reasons for her AWOL and Plaintiff failed to disclose her opioid abuse to the Corps. *Id.* Plaintiff, on the other hand, contends that the Director's decision was arbitrary and capricious because it is not supported by record evidence. Pl.'s Mot. Summ. J. at 14. Specifically, Plaintiff argues that the Director improperly disregarded the Correction Board's finding that Plaintiff's supervisors ignored purportedly obvious signs of opioid addiction and failed to confront her. *Id.* at 14–17. Certainly, a court must "set aside" an agency's action if it is "arbitrary, capricious," and "unsupported by substantial evidence." *Finberg v. U.S. Dep't of Agric.*, 6 F.4th 1332, 1336 (D.C. Cir. 2021) (first quoting 5 U.S.C. § 706; and then citing *Taylor v. U.S. Dep't of Agric.*, 636 F.3d 608, 613 (D.C. Cir. 2011)). A court, however, will only invalidate agency action for lack of substantial evidence if "considering the record as a whole, no reasonable factfinder could have made the same finding as the agency." *Id.* A close look at the record here reveals that the Director's decision is reasonable and indeed adequately supported by the evidence.

The record reflects that Plaintiff's AWOL was the sign of an underlying problem and her supervisors recognized it as such. Indeed, Plaintiff's supervisors sought to ascertain the root cause of her AWOL, referring her to medical professionals to have her medically evaluated on two primary occasions. In September 2012, a Medical Review Board first convened on account of Plaintiff's duty station requesting a "medical review" of Plaintiff for her "excessive absenteeism and failure to fulfill expected duties and responsibilities." A.R. 205; *see also* A.R. 202. At that time, Plaintiff's performance rating had dropped to "unsatisfactory." A.R. 206

9

(further explaining that "because of [Plaintiff's] excessive absenteeism, her work performance had a detrimental effect to the overall nursing department" and that Plaintiff was "unaware of all changes and incidents that ha[d] occurred during her absence from the service and continue[d] to have difficulty becoming reacquainted with her departments"). The Medical Review Board identified three conditions which impaired Plaintiff's functionality: (1) recurring back pain; (2) migraine; and (3) left anterior shoulder pain. A.R. 205. After reviewing Plaintiff's medical records and her statement, the Medical Review Board concluded that Plaintiff's "conditions had resolved to where she [could] fully perform her duties . . . at her duty station." *Id.*

In December 2013, a Medical Review Board again convened because "[Plaintiff's] case was brought to the attention of Medical Affairs by the duty station as a Medical Investigation request" because "the duty station indicated [Plaintiff] ha[d] failed to report to her duty station," and Plaintiff nor her provider had provided the Corps with an adequate justification. *Id.* To ascertain Plaintiff's fitness for duty, the Medical Review Board reviewed Plaintiff's statement, in which she reported experiencing mental health issues over the prior year due to a "hostile work environment" that affected her "health and well-being physically, spiritually, and emotionally." A.R. 234. The Medical Review Board also considered statements from Plaintiff's health care providers and the results of a command-directed psychiatric evaluation, in which a psychiatrist diagnosed Plaintiff with "Major Depressive Disorder, Single Episode, Severe, in early full remission." A.R. 236. Observing that Plaintiff had been responding well to psychotherapy and was improving, the Medical Review Board found her fit for duty. A.R. 235–36. Notably, the record does not indicate that the Medical Review Board necessarily had reason to investigate Plaintiff for an opioid abuse condition, as Plaintiff failed to disclose the condition despite having ample opportunity to do so. *See generally* A.R. 202–03, 233–38.

The evidence thus supports the Director's conclusion that Plaintiff's supervisors were concerned about her AWOL and took appropriate steps to have her medically evaluated, and in doing so, the Corps satisfied any obligation to identify the medical condition affecting Plaintiff's performance. Accordingly, it was reasonable for the Director to conclude that no error or injustice existed in Plaintiff's records. The Court will therefore not disturb that decision. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019); *see also California Pub. Broad. F. v. FCC*, 752 F.2d 670, 675 (D.C. Cir. 1985) ("[W]here the agency decision appears reasonable and generally supported by the material before it, [a court] will not intervene.").

Although Plaintiff may have understandably been concerned about the potential stigma associated with self-reporting her opioid abuse, the Corps "strongly urges officers who believe they might have a substance abuse problem to request treatment before the problem progresses." A.R. 255; CCPM CC29.3.9(E)(3) (Policy on Alcohol and Other Drug Abuse). The Corps' substance abuse policy at the time expressly stated that it "offers inpatient and outpatient care for substance abuse to its officers" and "[v]oluntary requests for assistance will be handled confidentially." A.R. 255; CCPM CC29.3.9(E)(3). Moreover, the policy required the Corps to "support a substance abuse treatment plan that [was] voluntarily undertaken by an officer," including "approving sick leave and funding travel duties and from treatment facilities, as necessary, and changing duties or assignments." A.R. 255; CCPM CC29.3.9(E)(3). Notably, the policy offered officers a safe harbor, which ensured that "[a]n impaired officer's retention on the job and/or promotional opportunity [would] not be jeopardized in any way solely because of a voluntary request for counseling or referral assistance." A.R. 256; CCPM CC29.3(E)(5). Plaintiff unfortunately did not avail herself of the safe harbor, and the Corp's policy makes an officer "responsible for conforming to the standard of conduct and performance expected" by the Corps

11

and "responsible for any adverse effects that alcohol and/or other drug usage has upon his/her performance of official duties . . . ." A.R. 257; CCPM CC29.3(F)(1)(a).

Furthermore, consistent with the Corps' substance abuse policy, Plaintiff's supervisors fulfilled their obligation to inquire into the source of the problem underlying her AWOL. They referred Plaintiff to medical professionals on two occasions for medical evaluation and reasonably relied on those professionals' expert opinions regarding the cause of her underlying difficulties, none of which identified opioid addiction as the source. And Plaintiff identifies no authority supporting a duty for a supervisor to refer a Corps employee to mandatory or voluntary drug treatment for an addiction of which the supervisor is unaware—particularly where the supervisor has made a reasonable inquiry into the source underlying the employee's conduct and received a professional opinion identifying a source unrelated to opioid addiction. In short, Plaintiff's supervisors acted reasonably under the circumstances. Accordingly, the Director reasonably concluded that the Corps' actions were consistent with its substance abuse policy, contrary to Plaintiff's assertions.

Nevertheless, Plaintiff maintains that the Director overlooked the Correction Board's finding that the Corps ignored Plaintiff's symptoms of opioid abuse. But a careful review of the Correction Board's reasoning reveals its flaws. In concluding that Plaintiff's supervisory chain of command ignored obvious signs of substance abuse, the Correction Board cited *Verbeck v. United States*, 89 Fed. Cl. 47 (2009), as "relevant." A.R. 116–117; *see also* A.R. 112–13 (Plaintiff's application citing *Verbeck* to rebut the advisory opinion). In *Verbeck*, a Corps officer sought back pay after being terminated during a three-year probationary period for performance deficiencies. 89 Fed. Cl. at 64. The Correction Board upheld the termination but in doing so, it failed to consider record evidence that those deficiencies may have resulted from a medical

12

condition arising during the officer's service. *Id.* at 70. The Court of Federal Claims vacated the Correction Board's decision, finding that the Correction Board overlooked evidence of the officer's medical impairment, an impairment of which a physician had identified prior to her termination. *Id.* Because the Correction Board in *Verbeck* acknowledged no impairment despite evidence to the contrary, its conclusion that the officer was fit for service, and thus not entitled to back pay, was flawed. *Id.* The circumstances here, however, are distinguishable.

Unlike *Verbeck*, the evidence here does not indicate that Plaintiff was experiencing a medical condition that the Corps overlooked. Specifically, the record does not reflect that Plaintiff exhibited symptoms necessarily consistent with those of opioid abuse during her service such that the Corps was, or should have been, aware of Plaintiff's opioid abuse condition. *See generally* J.A. Although Plaintiff now asserts that her absences can be explained by opioid addiction, the record reflects—and Plaintiff concedes—that she did not make that condition known to the Corps during her service. *See, e.g.*, A.R. 202–203 (Medical Affairs Branch soliciting Plaintiff's own narrative of her medical condition to determine her fitness for duty in 2012); A.R. 205–10 (Medical Review Board's review of Plaintiff's statements regarding her health); *see also* Pl.'s Mot. Summ. J. at 18–19 (stating that "[Plaintiff's] supervisors were unaware of her opioid abuse and thus did not do anything about it" and that the "incontrovertible evidence" shows that Plaintiff's superiors "did not intervene to assist [Plaintiff] with her opioid use disorder because they were unaware of it").

Rather, as noted above, the record reflects that Plaintiff's supervisors recognized her AWOL to be a sign of an underlying problem. Indeed, Plaintiff's supervisors twice referred her to medical professionals to evaluate whether a medical condition could explain that underlying problem. On both occasions, medical professionals identified conditions other than opioid

addiction as the cause of Plaintiff's difficulties. Consistent with *Verbeck*, neither medical evaluation indicated that Plaintiff's opioid addiction was the source of her AWOL; nor did either medical evaluation suggest that the source remained unidentified such that further inquiry was necessary. The record thus reflects that the Corps had no reason to conclude that there were "obvious signs" of opioid abuse, as Plaintiff asserts. To be sure, there were signs of an underlying problem but not any signs that the problem stemmed from opioid addiction. Because the Director's decision is both reasonable and supported by the record, the Court must defer to it. *Kreis*, 866 F.2d at 1512 ("[W]e require only that the agency exercise its discretion in a reasoned manner, but we defer to the agency's ultimate substantive decision."). Accordingly, the Court cannot conclude that any injustice remains to be corrected, despite Plaintiff's contentions to the contrary.[1] *See* Pl.'s Mot. Summ. J. at 22–23.

### B.  The Director's Decision Did Not Deprive Plaintiff Of Her Due Process Rights

Plaintiff also challenges the Director's decision to dismiss her record correction application "with prejudice." Pl.'s Mot. Summ. J. at 23–24. She argues that this dismissal violates her Fifth Amendment due process rights because federal law allows applicants to seek reconsideration. Pl.'s Mot. Summ. J. at 23 (citing 10 U.S.C. § 1552(a)(3)(D)). To be sure, an agency's departure from statutes or regulations that afford procedural protections may violate

---

[1] Plaintiff makes much of the fact that the Director stated in his decision that Plaintiff "did not report her addiction until filing an [a]pplication with the [Correction] Board nearly three-years post separation." Pl.'s Mot. Summ. J. at 22 (quoting A.R. 2). Plaintiff contends that such a statement is an "implicit accusation that [Plaintiff] fabricated her struggles with opioid addiction for her own gain" and shows "an impermissible bias against [Plaintiff] and others in substance abuse recovery." *Id.* But Plaintiff's description is unsupported. The Director's statement simply means that the Corps was unaware of Plaintiff's substance abuse condition at the time the Corps deemed her AWOL and terminated her; the Corps became aware of her condition only after Plaintiff brought it to the Corps' attention through her record correction application several years later. The Court does not interpret the Director's statement to reflect any purported "medieval bias against people who suffer from substance abuse." *Id.*

14

due process. *Larumbe v. Austin*, No. 22-01817, 2023 WL 7156529, at *3 (D.D.C. Oct. 31, 2023) (first citing *Lopez v. Fed. Aviation Admin.*, 318 F.3d 242, 247 (D.C. Cir. 2003); and then *United States v. Caceres*, 440 U.S. 741, 749 (1979)). But Plaintiff overlooks that Corps policy explicitly recognizes that record correction applications in certain instances can be denied "without prejudice." *See* CCPM CC49.9(I)(9) ("The board may permit an applicant to withdraw his/her application without prejudice at any time before its proceedings are forwarded to the Secretary."); *see also* CCPM CC49.9(E)(3) ("Denial of an application under this paragraph is without prejudice to further consideration . . . ."). Implicitly, it therefore follows that an application can also be denied "with prejudice," insofar as it constitutes a final determination of the issues presented and considered. *See* CCPM CC49.9(I)(11) ("The recommendation of the board, as approved, constitutes a final determination of the issues presented and considered."). Plaintiff may still seek reconsideration of that final determination in specific circumstances, that is, if a request for reconsideration is "supported by materials not previously presented to or considered by the board in making such determination." 10 U.S.C. § 1552(a)(3)(D). But Plaintiff cannot bring the exact same record correction application before the Correction Board for consideration anew. *See* CCPM CC49.9(I)(11) ("Reconsideration is granted only if newly discovered evidence or information, not previously considered by the board, is presented by the applicant or otherwise comes to the attention of the board and then only if the newly discovered evidence or information would, if true, result in a determination other than that originally made."). The Court does not read the Director's decision as precluding Plaintiff from seeking reconsideration of the denial of her record correction application under the correct circumstances. Thus, the Director did not depart from federal statute or the Corps' own policy, as Plaintiff contends. *See* Pl.'s Mot. Summ. J. at 23–24. The Court does not disturb the Director's

decision but only clarifies that Plaintiff may seek reconsideration if she meets the prerequisites for obtaining such relief, as explained above.[2]

## V.  CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment (ECF No. 13) is **DENIED**, and Defendant's Cross-Motion for Summary Judgment (ECF No. 16) is **GRANTED**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  July 23, 2026                                                              RUDOLPH CONTRERAS
                                                                                             United States District Judge

---

[2] To the extent that the Director's reference to dismissal with prejudice was error, it is harmless error. *See* 5 U.S.C. § 706 (stating that when determining whether an agency violated the APA, "due account shall be taken of the rule of prejudicial error"); *PDK Lab'ys Inc. v. U.S. D.E.A.*, 362 F.3d 786, 799 (D.C. Cir. 2004) ("In administrative law . . . there is a harmless error rule . . . . If the agency's mistake did not affect the outcome, if it did not prejudice the petitioner, it would be senseless to vacate and remand for reconsideration."); *Oglala Sioux Tribe v. U.S. Nuclear Regul. Comm'n*, 896 F.3d 520, 535 (D.C. Cir. 2018) ("The harmless error standard of the APA merely requires a showing of prejudice. That standard does not impose a . . . particularly onerous requirement." (citation modified)). The Government concedes that Plaintiff can seek reconsideration on the same terms under Corps policy as if the decision had been silent about whether her application had been denied with prejudice. Def.'s Cross-Mot. Summ. J. at 18.